748 So.2d 1072 (1999)
Scott W. McDANIEL, Appellant,
v.
Michelle BURTON, Appellee.
No. 99-1962.
District Court of Appeal of Florida, Fourth District.
December 29, 1999.
*1073 Philip Michael Cullen, III, Fort Lauderdale, for appellant.
William C. Purcell, Fort Lauderdale, for appellee.
TAYLOR, J.
The father appeals from a final order sua sponte dismissing his petition to modify a custody decree under the Uniform Child Custody Jurisdiction Act (UCCJA) and transferring it to a court in Washington County, Ohio, where the mother and child reside.
In 1994, subsequent to entry of a final order of paternity, the father and mother entered into a written stipulation providing for shared parental responsibility, with the mother to serve as primary residential parent and the father to enjoy visitation rights. The stipulation further dissolved a temporary injunction that enjoined the Mother from removing the child from the jurisdiction of the Florida court and allowing her to relocate to Ohio or any other state within the continental United States. The parties' stipulation was ratified and adopted by the Broward Circuit Court in a final order. Pertinent to issues raised in this appeal is the following provision in the stipulation:
The parties hereby further stipulate that Broward County, Florida, shall continue to exercise jurisdiction over all matters pertaining to custody, visitation and support of the minor child JOSHUA BLAIR BURTON MCDANIEL. The parties agree that unless each party agrees otherwise in writing, that Broward County, Florida shall continue to exercise jurisdiction in the above matters regardless of where the minor child resides and agree that any Statutes which indicate that jurisdiction lies otherwise shall be waived by mutual agreement.[1]
*1074 The mother and child relocated to Ohio. In 1999, the father petitioned the Broward Circuit Court to hold the mother in contempt for violating the court's final order. He complained that the mother interfered with his attempts to participate in his son's upbringing and obstructed his attempts to exercise his visitation rights. In addition to a contempt order, he sought modification of the final judgment to obtain primary residential custody of the child or modify the visitation arrangements. Whereupon, the mother filed a motion to stay pending a determination of the Ohio courts "as to which court would be the appropriate forum", since Ohio was now the child's home state. A month later, the mother filed a separate petition for modification in the Court of Common Pleas of Washington County, Ohio.
After consulting by telephone with the presiding Ohio judge, the Broward trial judge sua sponte dismissed the case and transferred it to the Ohio court. In a letter confirming the phone conversation, the Broward judge wrote:
As per our telephone conversation today under the UCCJA, regarding the above referenced case, I agree you would have jurisdiction over this child that has resided in your jurisdiction for the last 3½ years.
In the dismissal order, the court said, "[p]er the UCCJA, this Court relinquishes jurisdiction to Washington County Court ProbateJuvenile Division in Ohio."
The father raises several issues on appeal, but we find merit only in his assertion that the trial court erred in dismissing the case and relinquishing jurisdiction to the Ohio court without affording him an evidentiary hearing. We agree with appellant that, based upon the facts in this case, a dismissal without a hearing was unwarranted.
A trial court's decision to relinquish jurisdiction of a petition for modification is subject to an abuse of discretion standard of review. Thomas v. Thomas, 724 So.2d 1246, 1250-51 (Fla. 4th DCA 1999). In Yurgel v. Yurgel, 572 So.2d 1327, 1332 (Fla.1990), the supreme court held that once a court acquires jurisdiction in a child custody case under section 61.1308, Florida Statutes, that jurisdiction is presumed to continue, "and it continues up until a Florida court expressly determines on some other basis that jurisdiction no longer is appropriate, until virtually all contacts with Florida have ceased, until some other Florida statute terminates jurisdiction, or until jurisdiction is terminated by operation of the PKPA." Yurgel holds that a child's presence in another state for over six months does not automatically terminate Florida's jurisdiction. Id. However, our supreme court expressly recognized "that there may be circumstances in which equity and fairness require the courts of Florida to decline to exercise continuing jurisdiction because another state is the more appropriate forum." Id. at 1331. Thus, the UCCJA precludes a state from modifying the custody decrees of another state, unless the latter no longer has jurisdiction or has declined to exercise it.
The State of Florida continuously had jurisdiction over this custody dispute and it did not lose jurisdiction merely because the child moved to Ohio and continued to reside there for 3½ years preceding the initiation of modification proceeding. "It is readily apparent, therefore, that only if the trial court could find on this record before it that it had been divested of jurisdiction in one of the four ways described in Yurgel should it have dismissed the case." Booker v. Booker, 636 So.2d 796, 799 (Fla. 1st DCA 1994). It appears, from the limited *1075 record before us, that the trial court dismissed the father's petition and relinquished jurisdiction in favor of the Ohio court on the ground of forum non conveniens.
"A trial court's ruling on a suggestion of inconvenient forum is discretionary, but a court that dismisses an action on that ground abuses its discretion `where there is no record evidence supportive of the court's factual findings.'" Booker, 636 So.2d at 800 (quoting Kies v. Hollub, 450 So.2d 251, 255 (Fla. 3d DCA) pet. for rev. denied, 453 So.2d 1364 (Fla.1984)). Booker further instructs:
A court of this state possessing jurisdiction to make an initial or modification decree `may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.' § 61.1316(1), Fla. Stat. (1991). The supreme court has held that section 61.1316 simply `codifies and strengthens the longstanding judicial doctrine of inconvenient forum.' Yurgel, 572 So.2d at 1329. However, the trial court's discretion under this doctrine `is not unbridled. Its exercise should be based on the established guides for application of the doctrine, vis-a-vis the facts disclosed.' Southern Railway Company v. McCubbins, 196 So.2d 512, 516-17 (Fla. 3d DCA 1967). Since the plaintiff is usually accorded the choice of forum whenever two or more appropriate forums may be available, upon application for transfer or dismissal on grounds of forum non conveniens, it is the moving defendant who must `meet the burden of showing there is another convenient forum.' British-American Insurance Company, Ltd. v. Cladakis, 321 So.2d 448, 449 (Fla. 3d DCA 1975). See also Westshore Glass Corporation v. Hack Industries, Inc., 522 So.2d 1046 (Fla. 2d DCA 1988) (trial court cannot transfer venue where there is no sworn evidenceneither affidavits nor testimonyupon which it could base its order).
The issue of transferring or dismissing a cause on grounds of forum non conveniens traditionally has been an evidentiary matter, and subsection 61.1316(3) provides the following specific factors (in addition to the best interest of the child) that a trial court must consider in determining whether another forum is more appropriate to hear issues regarding child-custody. Thus, transfer or dismissal may be appropriate only:
(a) If another state is or recently was the child's home state;
(b) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;
(c) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;
(d) If the parties have agreed on another forum which is no less appropriate; and
(e) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in s. 61.1304. § 61.1316(3), Fla.Stat. (Emphasis added.) In addition, when a similar proceeding is pending in another state, subsection 61.1316(4) specifically authorizes communication between the Florida court and the court of the other state to exchange information concerning the more appropriate court to exercise jurisdiction.
Booker, 636 So.2d at 799-800; See also Chaddick v. Monopoli, 714 So.2d 1007 (Fla.1998).
In Chaddick, the supreme court addressed the mandatory provision of section 61.1314, which requires a Florida court handling a custody dispute to defer to a court in another state if, at the time a petition was filed in Florida, a similar proceeding *1076 was pending in a court of another state which exercised jurisdiction in substantial conformity with the UCCJA. Id. 1009. Section 61.1314 mandates that a Florida trial judge, upon learning of the foreign proceeding and before assuming jurisdiction, communicate with the court in which the other proceeding is pending. Although the court recognized that the trial court has discretionary authority to hold an evidentiary hearing, it concluded that to assure future cases were not jeopardized by an inadequate record, the parties should be given an opportunity to be present when a Florida judge and the judge of a sister state communicate, or that a record of the conversation be made. The parties, however, may not participate in the conversation. Additionally, the court held that the Florida judge must explicitly set forth in the record the reasons for the judge's finding that the sister state was or was not exercising its jurisdiction in substantial conformity with UCCJA. Id. at 1013.
In Johns v. Johns, 720 So.2d 239 (Fla. 1998), a Florida court entered an order modifying a final decree, that, by stipulation of the parties, allowed the former wife and child to relocate to Michigan. Within a few years, the former husband, still a Florida resident, commenced modification proceedings because the former wife's health had deteriorated and the child's maternal aunt and her husband, who had previously initiated guardianship proceedings, were interfering with the former husband's ability to contact the child. The former wife asserted that the Florida court lacked jurisdiction to modify its own decree. The Michigan judge and the Florida judge had three phone conversations, which resulted in the Florida court agreeing that Michigan had jurisdiction. However, neither court held a hearing to determine jurisdiction. The supreme court, relying on Chaddick, reversed and stated that "the parties must be given an opportunity to be present during any conversation the Florida judge has with a judge of a sister state, and the trial judge must set forth specific findings regarding the basis for concluding that jurisdiction in the sister state is or is not appropriate." Johns, 720 So.2d at 240. The court explained that it had upheld the decision in Chaddick, despite the lack of an evidentiary hearing, "because the record on appeal was sufficient for [it] to determine that the mother had `fully participated' in the out-of-state proceedings. Additionally, the trial judge made notes of the conversations with the out-of-state judge that were part of the record in that case.'" Id. (quoting Chaddick, 714 So.2d at 1012).
The reasoning in Chaddick and Johns applies to the case before us. The court below, on its own motion, dismissed the father's petition after a phone conversation with the Ohio judge. That conversation resulted in a letter, which stated only that the Ohio court would have jurisdiction because the child had resided in Ohio for three and a half years. Similarly, the trial court's order dismissing the petition failed to show that the statutory factors enumerated in section 61.1316 were met. Because there was no evidence presented to the trial court to establish that Florida was an inconvenient forum and no findings of fact made by the trial court, we find that there is insufficient record support for the dismissal of the father's petition.
To summarize, we hold that a trial court has discretion in determining whether to hold an evidentiary hearing on these jurisdiction issues. However, where the court's decision to allow or not allow a sister state to exercise jurisdiction will be based, in whole or part, upon conversations the judge has with the judge of a sister state, then the court must allow the parties to be present during the conversation and set forth specific findings regarding the basis for concluding that jurisdiction in a sister state is appropriate.
For the reasons stated above, we reverse the order dismissing the father's petition and remand for the trial court to *1077 consider, in addition to the best interests of the child, the factors enumerated in section 61.1316, Florida Statutes, and to make specific findings of fact in accordance therewith.
REVERSED and REMANDED.
WARNER, C.J., and DELL, J., concur.
NOTES
[1] The Father asserts that the Mother waived any right she may have to litigate custody issues in another jurisdiction because of this stipulation. Under certain circumstances a trial court is required to consider the parties' stipulation regarding the appropriate forum to litigate custody issues. § 61.1316(3)(d), Fla. Stat. However, whether a court has jurisdiction to make a child custody determination or modification, pursuant to section 61.1308 of the UCCJA, is a question of subject matter jurisdiction. "Subject matter jurisdiction is conferred upon a court by a constitution or a statute, and cannot be created by waiver, acquiescence or agreement of the parties." Snider v. Snider, 686 So.2d 802, 804 (Fla. 4th DCA 1997).